C. CLARENCE KASKEL, Plaintiff, *v.* VINCENT IMPELLITTERI et al., Constituting the Board of Estimate of the City of New York, et al., Defendants.

Supreme Court, Special Term, New York County, March 13, 1953.

*Harold L. Herzstein* for plaintiff.

*Denis M. Hurley, Corporation Counsel (William S. Lebwohl* and *Edward Weingarten* of counsel), for City of New York, defendant.

EDER, J. This controversy relates to what is termed and known as the Columbus Circle Slum Clearance Project. The plaintiff is an owner of property located within that area and he is a taxpayer. He brings this action under the provisions of section 51 of the General Municipal Law, alleging the defendants' acts and determinations, in connection with the prosecution of the project and proceedings taken and attempted to be taken under it are illegal and should be so declared and enjoined.

The City of New York has entered upon an extensive program of slum clearance and rehabilitation of blighted areas to be carried out under title I of the National Housing Act of 1949 (U. S. Code, tit. 42, §§ 1451–1460).

The governing statute under which the city has proceeded is section 72-k of the General Municipal Law. This provides for the acquisition of real property for clearance and rehabilitation. Subdivision 1 thereof provides that the governing board or other appropriate authority of a municipal corporation may, among other modes, acquire by condemnation, real property or any interest therein necessary for or incidental to the clearance,

replanning, reconstruction, and neighborhood rehabilitation of substandard and insanitary areas.

Subdivision 2 provides that in addition to employing any other lawful method of utilizing or disposing of any real property or any interest therein owned by a municipal corporation, or acquired by it pursuant to subdivision 1, such municipal corporation, acting through its board of estimate, may, among other powers, sell or otherwise dispose of any such real property to any person, firm or corporation at the highest marketable price or rental, at public auction, or by sealed bids, for the purpose of clearance, replanning, reconstruction and neighborhood rehabilitation by the purchaser of such real property in substandard and insanitary areas, in such manner as may be prescribed by the board of estimate or other governing body.

Subdivision 3 provides, among other things, that in a proceeding under said section 72-k, in addition to all other powers which it may exercise, a municipal corporation, acting through its board of estimate or other governing body, may co-operate with the Federal Government and apply for and accept financial assistance, loans and grants, as provided in said title I of the Housing Act of 1949, and all Federal laws amendatory and supplemental thereto.

The constitutionality of the said section 72-k has been upheld in *Matter of Harlem Slum Clearance Project* (114 N. Y. S. 2d 787). It may be here remarked, that in the instant suit, the constitutionality of section 72-k is again assailed. Counsel for plaintiff stated on the argument that being aware of said decision by the writer in *Matter of Harlem Slum Clearance Project (supra)*, and being satisfied that this court would not change its decision sustaining the constitutional validity of this enactment, he would, therefore, not press this ground but would urge and rely upon other contentions to support the instant action which is for a declaratory judgment that the creation and prosecution of the said project be adjudged illegal and that the same be restrained.

The city has proceeded under the provisions of said section 72-k; it has acted through its duly designated official bodies and municipal officers, who have reported, recommended, and found, that the project area is substandard.

In December, 1952, the committee on slum clearance plans submitted a report to the board of estimate recommending that the board approve the redevelopment plan for the involved area, which is bounded by 60th Street, Eighth Avenue (Columbus Circle), Columbus Avenue and 58th Street, in the borough of Manhattan. On December 12, 1952, the city

planning commission, after a public hearing, approved the project for the redevelopment of that area. On December 18, 1952, the board of estimate approved a redevelopment plan, and deeming it desirable and helpful to the proper prosecution thereof and beneficial to the needs of the city, authorized the said committee on slum clearance plans to apply for financial assistance under said title I of said National Housing Act of 1949, and such proceedings were had as part of the redevelopment plan that a contract was entered into between the city and Federal Government through the Housing and Home Finance Administrator under which the Federal Government will absorb two thirds of any loss incurred in the acquiring of and making a site available and the city one third thereof.

On January 15, 1953, the board of estimate, after a public hearing, adopted resolutions in which it found that the acquisition of the real property in the project area is in the interest of the city and the welfare of its residents and authorized the acquisition of the property and the sale of a portion thereof for a housing site, at public auction, pursuant to said section 72-k of the General Municipal Law.

On the same date, the board of estimate adopted a resolution approving a proposed contract between the city and the Triborough Bridge and Tunnel Authority with respect to the construction of a coliseum on the easterly portion of the project, and on said day such a contract was executed by the city and said authority. On the same day the board of estimate also approved a proposed contract between the city and a private developer, viz., the Columbus Circle Apartments, Inc., in connection with the housing portion of the project and the contract was executed by the city and said named redeveloper on said day. Also, on said day the board of estimate approved the capital grant contract between the city and the Federal Government, alluded to *supra*.

Pursuant to a resolution adopted by the board of estimate on January 15, 1953, the corporation counsel caused to be published in the *City Record* a notice that on March 2, 1953, an application would be made to this court for an order to condemn the real property in the project area.

This action was thereupon commenced for the mentioned declaratory judgment and for injunctive relief *pendente lite*.

In that connection plaintiff obtained an order requiring the defendants, as city officials, and the board of estimate, and the city, to show cause why an order should not be made enjoining and restraining them, *pendente lite*, from doing any acts pursu-

ant to or in performance of the reports, consents and resolutions of the city planning commission and the board of estimate, and pursuant to the mentioned contracts between the city and the Federal Administrator, the Triborough Bridge and Tunnel Authority and the Columbus Circle Apartments, Inc., and from proceeding with the condemnation of said project site. Defendants' cross-move for dismissal of the complaint under subdivision 2 of rule 106, for legal insufficiency, and for summary judgment under rules 112 and 113, dismissing the complaint.

Upon the argument plaintiff's counsel stated:

" I said to your honor that I would not attack the constitutionality [of section 72-k of the General Municipal Law] before your honor, because your honor ruled on it; and nothing in an economic or legal sense has happened since you rendered your opinion, to induce me to think you are going to change it.

" * * * Apart from the questions of constitutionality, my main reliance is on the fact that the Housing Act of 1949 is not being followed in this case."

In brief, as the court apprehends the plaintiff's basic position, it is that although the Federal Administrator has approved the request of the city for financial aid in the form of a capital grant to assist and enable it to carry to fruition the proposed slum clearance and redevelopment plan by the Federal Government absorbing two thirds of any loss incurred by the city in making a site available, and whereby the city will absorb only one third of any such loss, the city cannot lawfully avail itself of and utilize the Federal capital grant or use its own one third of city funds unless it appears and it is made to appear that the condemned area will be developed predominantly for residential use; that such is not the fact in the case at bar and, hence, the use of any city funds or even Federal Government funds, is illegal and constitutes waste. Further, that as a factual matter the area in concern is not of a substandard and insanitary character and there is, therefore, no factual or legal basis for an order of condemnation under section 72-k or any legal right in the city to use the Federal capital grant aid or to use the city's contribution thereto for the contemplated project; also, that in entering into a contract with the Triborough Bridge and Tunnel Authority it is an illegal act, since such a redevelopment contract must be made with a private redeveloper and the Triborough Bridge and Tunnel Authority is not such but is a public benefit corporation.

Under the provisions of section 72-k the right to proceed thereunder is conditioned upon the existence of a slum area of a substandard or insanitary nature which is to be improved by redevelopment. This is likewise indicated by the language of section 1 of article XVIII of our State Constitution which empowers the Legislature to " provide in such manner, by such means and upon such terms and conditions as it may prescribe * * * for the clearance, replanning, reconstruction and rehabilitation of substandard and insanitary areas ".

Section 72-k also refers to acquisition by condemnation of real property for the improvement of substandard and insanitary areas.

Plaintiff contends as a fundamental feature that the finding by the officially designated bodies that the area in concern is substandard is without factual support, and that such finding of these bodies or officials is therefore unreasonable, arbitrary, capricious and illegal.

This is a challenge of prime concern. If that be the fact, then the entire project must fall and everything done in pursuance thereof and toward its attainment is illegal and plaintiff would be entitled to the relief sought. What, then, is the proof offered by plaintiff to support this claim?

To uphold this premise plaintiff relies on the report and opinion of the affiant Vladeck as one experienced in that field and competent to express an opinion entitled to respectful consideration.

It is the view of said affiant that there is no substantial factual basis for any administrative determination that the Columbus Circle area is substandard or insanitary. On the other hand, the determination of the city that this area is substandard is not an arbitrary and abrupt decision but is based on studies, investigations, public hearings and reports of officially designated bodies and duly constituted municipal officials. The net result is a disagreement on this feature between plaintiff's affiant Vladeck and these official bodies and municipal officials.

In such a situation there is no basis for a claim that the determination complained of is unreasonable, arbitrary and capricious. It reduces itself to and becomes largely a matter of opinion.

There are, undoubtedly, instances where men of training and experience in such subjects, as well as in other subjects, may honestly differ in determining whether a certain district is a slum area or is a substandard or insanitary one.

It is the established law that if the question is a debatable one, the court has no right to substitute its opinion or judgment for that of the duly designated bodies or officials to whom has been committed the power to make the determination (*Ziegler* v. *Chapin,* 126 N. Y. 342, 348; *Campbell* v. *City of New York,* 244 N. Y. 317, 328; *Kelly* v. *Merry,* 262 N. Y. 151, 160).

The honesty of the defendants in making their reports, recommendations and determinations is not challenged, and there is nothing in the record, in the opinion of the court, which can justifiably warrant a conclusion by it that the finding of the defendants that the area involved is a substandard one is an unreasonable, arbitrary and capricious determination.

The plaintiff has no right to ask the court to substitute its judgment for that of the duly designated official bodies and municipal officials, and that is what the plaintiff is attempting to do in that regard.

Plaintiff contends, next, that the redevelopment plan violates the provisions of the National Housing Act of 1949 which, it is submitted, is intended for the protection of the taxpayers and residents of the city, in that it does not provide for redevelopment for predominantly residential uses and is, therefore, illegal, and that the city should, in consequence, be enjoined from expending funds allocated to the city under it.

If the city is improperly spending or contemplates spending funds contributed toward the project by the National Housing and Home Finance Agency it is a matter for the consideration and concern of the Federal Administrator and not for the plaintiff and, on this feature, the court is of the view that the plaintiff is without legal capacity to sue (*Hunter* v. *City of New York,* N. Y. L. J., Mar. 5, 1953, p. 733, col. 1). The basis of this contention by plaintiff is that, under the National Housing Act of 1949 (U. S. Code, tit. 42, § 1460), if an area to be acquired is a slum and *is* predominantly residential in character, then it *may* be redeveloped for commercial purposes, but if such area *is not* predominantly residential in character, then it *must* be redeveloped for predominantly residential purposes, and it is argued that there is no claim by the city that the Columbus Circle area is predominantly residential and since the area is not residential in character now, the Federal law requires that it *must* be redeveloped for predominantly residential uses and this is not being done. Here, again, the matter is one for the consideration and concern of the Federal Administrator and not of the plaintiff.

Plaintiff contends that though it may be a matter for the consideration and concern of the Federal Administrator, plaintiff, as a property owner and taxpayer, has a standing to complain, at least as to the city's one-third contribution to the land acquisition cost, and for that reason he is entitled to apply to enjoin the city from doing any act incurring any cost toward the attainment of an illegal objective.

The court does not see that this alters the situation. The city has the undoubted right under the governing statute, section 72-k of the General Municipal Law, to determine whether an area is one of slum character and to initiate proceedings for its clearance, redevelopment and rehabilitation, and it may, thereunder, acquire by condemnation real property for that purpose. This it may do without calling upon the Federal Government for financial aid under title I of the National Housing Act of 1949. It is not compulsory but is entirely optional with the city to avail itself of Federal Government financial aid under this Federal law.

Section 72-k of the General Municipal Law is designed to accomplish the elimination and rehabilitation of slum areas which are substandard and insanitary, and does not restrict the redevelopment project to a *particular* type of improvement and does not require that the redevelopment must be for predominantly residential purposes.

This feature of redevelopment for predominantly residential use is not made a factor of controlling significance under this enactment.

Eminent domain may be employed to effectuate a plan for the clearance and rehabilitation of slum areas and there is nothing in the governing statute which confines such plan to clearance and rehabilitation or redevelopment solely for residential purpose and use, or predominantly so. Such plan for clearance and rehabilitation of slum areas may provide for commercial redevelopment of a slum area consisting in whole or in part of commercial structures and the redevelopment plan under section 72-k may include both housing and commercial purposes without any reference or consideration to predominant residential use as a controlling factor.

A further contention submitted by the plaintiff is that the redevelopment plan violates the provisions of the National Housing Act of 1949 in that it does not provide for redevelopment by private enterprise and that the city should therefore be enjoined from spending the Federal Government's two-thirds

contribution, which is characterized as an expenditure from trust funds.

This claim is predicated on the premise that, insofar as the redevelopment plan provides for acquisition of title to the easterly portion and the sale thereof to the Triborough Bridge and Tunnel Authority for the construction of a coliseum, it is not a redevelopment by private enterprise but by a public benefit corporation, and, hence, such plan and ensuing contract are illegal and should be enjoined. There is no merit to this contention and it is not stressed by plaintiff. The fact that the authority may be a public benefit corporation does not bar it from participating nor does any statute inhibit it from doing so.

Similarly without substance is plaintiff's claim that the contract between the city and the private redeveloper, i.e., Columbus Circle Apartments, Inc., violates the statute which relates to public bidding. This seems to be a dying gasp.

Plaintiff argues that subdivision 2 of section 72-k of the General Municipal Law requires that the real property in these instances be disposed of at the highest marketable price or rental, at public auction, or by sealed bids.

The contract between the city and Columbus Circle Apartments, Inc., contains a provision of defeasance that it shall be null and void in the event that said corporation is not the highest bidder at the sale. It is the thought of plaintiff that as the contract between the city and this private sponsor-redeveloper was the result of long thinking and planning between them which finally culminated in a contract, this may tend to discourage other bidders from attending and bidding in that Columbus Circle Apartments, Inc., has probably obtained an advantage of some sort as to what figure should be a maximum bid, and that the public bidding feature would in reality be of no benefit to the city.

It is pure conjecture without an iota of proof to sustain it and is apparently interposed for what it may be worth.

In ultimate analysis, the issue made by plaintiff is based upon the claim of violation by the city of the provisions of title I of the National Housing Act of 1949 in that no provision was made for housing in the redevelopment plan; that nonhousing uses predominate in the redevelopment plan; and that under title I of the mentioned Federal enactment taxpayers and residents of this city are entitled to have housing predominate in the redevelopment. The court, for the reasons stated *supra*, is of the opinion, and it is its ultimate conclusion, that there is no factual or legal merit to plaintiff's

claims, and that, upon the record presented, there is no basis for the action or for the injunctive relief sought.

Accordingly, the motion for an injunction *pendente lite* is denied and the motion to dismiss the complaint is granted.

As to the motion of the city for an order of condemnation, the motion is granted, but entry of an order is to be stayed for three days to enable plaintiff, who intends to appeal from the above adverse determination, to apply to the Appellate Division for a stay of further proceedings herein until the determination of the appeal.

Settle order.