TOWN OF AMHERST et al., Appellants, v. NIAGARA FRONTIER PORT AUTHORITY, Respondent.

Fourth Department, July 1, 1963.

*Raichle, Moore, Banning & Weiss* (*Frank G. Raichle* of counsel), for appellants.

*Ohlin, Damon, Morey, Sawyer & Moot* (*Richard E. Moot* of counsel), for respondent.

BASTOW, J. Plaintiffs seek a declaration that the proposed extension of a runway at the Buffalo airport for use by " jet " planes is a public nuisance and that such proposed action should be permanently enjoined. Defendant appeared specially and moved (1) to strike the complaint upon the ground that it is a legal entity not subject to the jurisdiction of Supreme Court (Civ. Prac. Act, § 237-a) and (2) to dismiss the complaint on the ground that the court did not have jurisdiction of the subject of the action. (Rules Civ. Prac., rule 106, subd. 1.)

Special Term granted both motions. In an opinion (38 Misc 2d 906, 908, 909) it concluded that defendant "was created by the State; it is part of the State, an arm or agency of the State" and that no " court has jurisdiction to pass upon the grievances of those bringing this suit for an injunction." In reaching these conclusions reliance was placed, among other authorities, upon *Easley* v. *New York State Thruway Auth.* (1 N Y 2d 374); *Benz* v. *New York State Thruway Auth.* (9 N Y 2d 486); *Mathewson* v. *New York State Thruway Auth.* (9 N Y 2d 788) and *Psaty* v. *Duryea* (306 N. Y. 413).

In our opinion those and similar decisions are distinguishable and not here controlling. The reasons that lead us to this conclusion require a brief statement of the creation of defendant, its powers, functions and duties. It was created by chapter 870 of the Laws of 1955 (Public Authorities Law, §§ 1300–1333). While created as a public benefit corporation (*Ibid.* § 1303, subd. 1), it serves a limited geographical area consisting of the City of Buffalo and such of two other named cities and five named towns in Erie County as might elect to become participating municipalities with Buffalo (*Ibid.* § 1302). It is empowered, among other things, to acquire, maintain and operate the following projects: airport, port improvement and parking meter. (*Ibid.* § 1304, subd. 5.) Each of these projects is limited geographically. The airport is the Buffalo municipal airport " owned and operated by the city of Buffalo " in the plaintiff towns (§ 1301, subd. 12). The port improvement is limited to ports in the district and authority over parking meters is limited to streets in the participating municipalities (*Ibid.* § 1301, subds. 10, 11).

While, as Special Term points out, section 1315 of the law makes a legislative determination that defendant is carrying out its corporate purposes " for the benefit of the people of the state " and is " regarded as performing a governmental function " it is significant that such determination was made in that section for the apparent purpose of exempting defendant from the payment of all taxes. (Cf. N. Y. Const., art. III, § 18; *People ex rel. Buffalo Bridge Auth.*, 277 N. Y. 292.) Equally, if not more significant, are the provisions that defendant's corporate life is 40 years plus and when it ceases to exist the several projects become the property of one or more of the participating municipalities. The airport specifically reverts to the City of Buffalo (Public Authorities Law, § 1303, subds. 5, 7).

The act contains the familiar grant of power to defendant " to sue and be sued " (*Ibid.* § 1304, subd. 1). Jurisdiction of

tort actions by implication is placed in courts of general juris-
diction. Section 1322 requires service of notice of claim in a
tort case as provided in section 50-e of the General Municipal
Law and there is a short period of limitation for commencement
of action thereafter.

Thus, in general outline the defendant Authority resembles
the Authority considered in *Pantess* v. *Saratoga Springs Auth.*
(255 App. Div. 426). That defendant had been given broad
powers to carry out the health policy of the State. Plaintiff was
injured and brought action in Supreme Court. Defendant
moved to dismiss on the ground that defendant was an agency
of the State and that the claim should be prosecuted in the
Court of Claims. In holding to the contrary the court said (p.
429): "We regard the Saratoga Springs Authority as an
agency exercising governmental powers, and the performance
of its functions is not so closely allied or held in such intimate
relation to the health activities carried on by the State itself
as to make its work a part of the health work carried on directly
by the State. The State did not ' employ ' the Authority to that
end. (*Paige* v. *State of New York,* [269 N. Y. 352], 356.) The
State is not liable for the torts of the Authority; and if an
actionable cause exists in favor of the plaintiff it may be
enforced only against the defendant or those persons whose
negligence caused the injury. From this it follows that claim-
ant's claim may not be prosecuted in the Court of Claims, and
that the Supreme Court has jurisdiction of the subject-matter."

It is significant in considering the subsequent pattern of legis-
lation relating to the New York State Thruway that *Pantess*
was decided in 1938 and the following year section 1607 (then
§ 1306-a) was added to the Public Authorities Law conferring
upon the Court of Claims exclusive jurisdiction to hear and
determine claims sounding in tort against the Saratoga
Authority (L. 1939, ch. 871).

The New York State Thruway Authority was created by
chapter 143 of the Laws of 1950 with power to sue and be sued.
Presumably from that time until 1954 courts of general juris-
diction were vested with jurisdiction of tort cases against the
Authority. (Cf. *Strang* v. *State of New York,* 206 Misc. 734.)
In the latter year section 361-b was added to the Public Authori-
ties Law (L. 1954, ch. 517, § 9). The provisions thereof con-
ferred exclusive jurisdiction upon the Court of Claims to hear
and determine all claims against the Authority for alleged torts
or breaches of contract.

This enactment was passed upon in *Easley* v. *New York State
Thruway Auth.* (1 N Y 2d 374, *supra*). There a tort claimant,

subsequent to the enactment of section 361-b brought an action in Supreme Court against the Authority. It was contended that the Legislature could not constitutionally divest Supreme Court of its jurisdiction over tort actions against such a corporation. The court held to the contrary. It concluded that the enactment was valid and in so doing stated that the Authority was an agent of the State.

*Benz* v. *New York State Thruway Auth.* (9 N Y 2d 486) (and *Mathewson* v. *New York State Thruway Auth.* [9 N Y 2d 788] decided therewith) held that the Supreme Court has no jurisdiction of an equity action brought against the Thruway Authority. In reaching this conclusion the court pointed out the two statutory grants of jurisdiction to sue the Authority found in sections 361-b and 368 of the Public Authorities Law. As we understand these decisions they are authority for the proposition that the Thruway Authority is not suable in an equity action because of the limited grant of jurisdiction to the Court of Claims of common-law actions and the absence of any further or additional grant to that or any other court. Thus in *Benz* it was said (p. 490): "There is no provision anywhere for equity suits against the Thruway Authority. It would indeed be remarkable if the Legislature which ' could have forbidden suits to be maintained against the Authority in any court or tribunal ' produced a situation where suits at law could be prosecuted (per express enactment) in the Court of Claims only but (by legislative silence) equity suits would be allowed against the Thruway Authority in the Supreme Court. There is no sign that the law-makers had any such strange intent."

Thus, it would seem that *Benz* is distinguishable from the case before us. It is bottomed on a finding and a statute that differ. The finding is that the Thruway Authority is an arm or agency of the State. The two statutes differ because the Legislature, as to the Thruway Authority, by express enactment has given jurisdiction of suits at law to the Court of Claims but has remained silent as to equity cases. Such is not the case in the enactment under consideration. It grants the broad power " to sue and be sued " and limits this general grant only as found in sections 1319 and 1322.

The defendant Authority is not an arm or agency of the State. It is an agency of local subdivisions of government (cities and towns) performing municipal functions — among other things, operating the Buffalo airport and maintaining parking meters. Running through most of the decisions in this area we find repeated references to the " close relationship " between the defendant and the State. (See, for instance, *Benz* v. *New York*

*State Thruway Auth.,* 9 N Y 2d 486, 489; *Matter of Plumbing Assn.* v. *New York State Thruway Auth.,* 5 N Y 2d 420, 424; *Easley* v. *New York State Thruway Auth.,* 1 N Y 2d 374, 376 and *Glassman* v. *Glassman,* 309 N Y 436, 441.) But if, in the case before us there is to be a " closeness " equation it is between the defendant and cities and towns and not the State.

Through the years there has been a clear distinction between legal principles applied to actions against local municipalities and those applied to the State. (Cf. *Weiss* v. *Fote,* 7 N Y 2d 579.) As to the latter the rule has been inviolate " [t]hat no action can be maintained against the government, state, or Federal, except by its consent, express and not implied, and to be found in some special statute ". (*Saranac Land & Timber Co.* v. *Roberts,* 195 N. Y. 303, 320.) In accordance with that principle the State, prior to 1929, had complete immunity from tort liability. Municipalities had a narrower immunity. " In the application of that rule [of soverign immunity] our courts drew a fine distinction between torts committed in the performance of duties strictly governmental and those occurring in the exercise by a municipality of its proprietary or private functions. As to the former the municipality was exempt from all liability; as to the latter ' it may be held to that degree of responsibility which would attach to an ordinary private corporation.' " (*Miller* v. *Town of Irondequoit,* 243 App. Div. 240, 241, per LEWIS, J., affd. 268 N. Y. 578.) When the State waived its immunity from tort liability (L. 1929, ch. 467) it extended to local units of government because they never had independent soverign immunity — their legal irresponsibility was an extension of the exemption possessed by the State. (*Bernardine* v. *City of New York,* 294 N. Y. 361, 365.)

It is unnecessary to explore in detail the equitable jurisdiction of Supreme Court to restrain the creation or maintenance of a nuisance by a municipality. It has been written that " [l]ike an individual, a municipality may, in a proper case, be enjoined from creating or maintaining a nuisance, or be required to abate one already created by it." (63 C. J. S., Municipal Corporations, § 770, subd. b, p. 69.) (See, also, *Herman* v. *City of Buffalo,* 214 N. Y. 316, 318; *Murphy* v. *Incorporated Vil. of Farmingdale,* 252 App. Div. 327.)

In *Hill* v. *Mayor* (139 N. Y. 495) an action was brought against the City of New York to restrain, as a nuisance, the maintenance of a certain pier. The municipality asserted that what it had so done was under authority of law and that it was engaged in the performance of a public duty and acting by express authority of the Legislature. In disagreeing with these

contentions it was said (pp. 501–502): "We need not discuss the cases, or consider how broadly the doctrine should be permitted to operate, since one condition or limitation has been firmly grafted upon it, which raises the final and ultimate question in the case before us. That limitation is that the authority which will thus shelter an actual nuisance must be express, or a clear and unquestionable implication from powers conferred, should be certain and unambiguous, and such as to show that the legislature must have contemplated the doing of the very act in question. For, consider what the proposition is. It upholds a positive damage to the citizen and denies him any remedy; it infringes his normal and recognized rights with absolute impunity; it sets a nuisance at his door utterly unbearable and requires him to bear it. Surely, an authority which so results should be remarkably strong and clear."

And in *Chapman* v. *City of Rochester* (110 N. Y. 273) the defendant was enjoined from discharging sewage into a creek that flowed across plaintiff's lands where the latter maintained an artificial basin for propagation of fish. Also, in *Squaw Is. Freight Term. Co.* v. *City of Buffalo* (246 App. Div. 472) this court reversed a judgment dismissing the complaint and remitted for the ascertainment of damages and the issuance, under stated conditions, of an injunction restraining defendant from disposing of sewage in the Niagara River. While the Court of Appeals modified (273 N. Y. 119) as to the conditions imposed in connection with the restraint because (p. 130) "an essential municipal activity is involved" the inherent jurisdiction of the court to act was not questioned.

The applicable legal principles support treatment of defendant, for decision only of the jurisdictional question, on the same basis as a municipal corporation and in the area of actions for nuisance the authority for such treatment is perhaps stronger than in some other areas of the law. The statute creating defendant conferred by implication jurisdiction in Supreme Court to entertain tort actions. Unlike the statutes relating to some Authorities such as the Thruway, Jones Beach and Saratoga Springs (Public Authorities Law, §§ 163-a, 361-b and 1607) the Legislature, as to defendant herein, has never specifically designated the Court of Claims as the forum for specific actions with the complementary exclusionary provisions as to the jurisdiction of Supreme Court of equity actions which our highest court has held must be read into such enactments.

Thus we are brought all the way round to a factual and statutory situation similar to that presented in *Pantess* v. *Saratoga Springs Auth.* (255 App. Div. 426, *supra*), except that defend-

ant, unlike that Authority, is not an arm or agency of the State but of local municipalities. The latter, however, are not liable for defendant's acts. It enjoys an existence separate and apart, even though it exercises a governmental function. (*Matter of Plumbing Assn.* v. *New York State Thruway Auth.*, 5 N Y 2d 420, 424.)

We conclude that defendant is subject to the jurisdiction of Supreme Court and that the complaint was improperly stricken pursuant to section 237-a of the Civil Practice Act.

The companion motion to dismiss pursuant to subdivision 1 of rule 106 of the Rules of Civil Practice presents a slightly different problem. Such application is based upon the ground that the court " has not jurisdiction of the subject of the action." The latter phrase is synonymous with " ' subject-matter ' of the action ". (*Merchants' Nat. Bank* v. *Hagemeyer*, 4 App. Div. 52, 56.) (See, also, CPLR, § 3211, subd. [a], par. 2, eff. Sept. 1, 1963 and Fifth Preliminary Report (N. Y. Legis. Doc., 1961, No. 15, pp. 482, 483.) But jurisdiction of the subject matter does not depend upon the ultimate existence of a good cause of action in the plaintiff in a particular case. (*Hunt* v. *Hunt,* 72 N. Y. 217, 229.) " If the particular action in question comes within the class of actions of which a court has cognizance, then that court has jurisdiction of the subject matter of that suit. Jurisdiction over the res, that is, the property in suit  *  *  * is sometimes called jurisdiction of the subject matter; but such jurisdiction is entirely different from, and must be kept clearly distinguished from, the court's jurisdiction of the subject matter in suit as referring to its jurisdiction over a particular class or type of action." (1 Carmody-Wait, New York Practice, § 53, pp. 65–66.)

Defendant examines the substantive allegations of the complaint — the *res* — and contends that no court may here intervene and substitute its judgment and discretion for that of the Authority by the granting of injunctive relief. We may not reach or pass upon this question in the posture in which the appeal comes to us. The authorities relied on by respondent are inapposite. Thus, in *Kaskel* v. *Impellitteri* (306 N. Y. 73) the issues were presented on plaintiff's motion for a temporary injunction and defendants' cross motion for dismissal of the complaint for legal insufficiency under subdivision 2 of rule 106 and for summary judgment under rules 112 and 113. (204 Misc. 346, 350–351.)

We emphasize, however, that our decision herein is limited to the issues of the jurisdiction of the court over defendant and of the subject of the action. We obviously do not reach or pass

upon the legal sufficiency of the complaint or whether the pleading may withstand a motion to dismiss for legal insufficiency or other pretrial motions.

The order, as resettled, should be reversed and the motion denied.

WILLIAMS, P. J., MCCLUSKY and HENRY, JJ., concur.

Order as resettled unanimously reversed, without costs of this appeal to any party, and motion denied, without costs.