OPINION OF THE COURT
William F. Mastro, J.
Motion by the City of New York (Calendar Ño. 2497) for summary judgment in action No. 2 (brought by the administrator of the estate of Julia Allan, and by him individually, hereinafter referred to as the Allan action), seeking to dismiss the complaint and all cross claims against the City is denied and the cross motion by defendants John Bonomo and Vincent Lavio (Calendar No. 2698) for partial summary judgment as to them is granted.
The underlying facts are as follows. According to statements by New York City Police Officers Bonomo and Lavio,[1] they were on patrol early in the morning of December 2, 1994, when they received a radio call reporting a dispute at a gas station located on Victory Boulevard and Willowbrook Road. The officers drove to the gas station and spoke with the attendant on duty. The attendant appeared frightened and told the officers that a man had knocked on the station window demanding money. After the attendant threatened to call the police, the man fled, stripping his clothes off as he ran. The man was later identified as Michael Weeks (whose estate, through its administrator, is a plaintiff in action No. 1, hereinafter referred to as the Weeks action).
About that time, another call came over the radio reporting a naked male in the street on Victory Boulevard. The officers immediately responded. Before leaving the gas station, Officer Lavio picked up the clothing that Weeks had shed before fleeing. Both officers testified that when they arrived at the call location, Weeks was standing naked near his car. One officer testified that when they pulled up, Weeks was waving his arms and jumping about but that he immediately calmed down when he observed the patrol car. The other officer only recalled Weeks staring at them. Both officers testified that they positioned the patrol car behind Weeks’ parked car and got out to confront Weeks.
*41 The facts surrounding what then ensued are disputed. The police officers present one version while another is offered by an independent eyewitness. Shortly after the incident at issue occurred, Michael Weeks was involved in a fatal motor vehicle accident with Julia Allan.
The police officers describe the incident that preceded the accident as follows. One of them tossed Weeks his pants. After he put them on, Weeks was told to sit on the curb. Weeks admitted ownership of the nearby car, but stated that he didn’t know where the keys were. Officer Lavio claims to have searched the interior of the car and found no keys (and no signs that the steering column was broken). At some point the officers decided to place Weeks in the driver’s seat of his car (rather than leave him half naked in the cold street), and tossed Weeks’ wallet on the seat next to him. The officers remained outside the car and claim to have continued to look on the ground (apparently behind the car) for the keys to the Weeks car. While they were thus engaged, Weeks started his car and drove away. The officers immediately entered their patrol car, made a U-turn and drove off in the opposite direction (allegedly to follow Weeks).[2] Weeks was then involved in the accident with the vehicle driven by Julia Allan which resulted in the death of both drivers.
An independent eyewitness, James Papio, describes the incident differently. According to Papio, when the officers first observed Weeks jumping around in the middle of Victory Boulevard, they exited their vehicle, grabbed Weeks, and walked him to the driver’s seat of his Monte Carlo. As the officers walked back toward their vehicle, Weeks jumped out of his vehicle and went back onto Victory Boulevard, removing his pants in the process. The officers eventually got Weeks back into the driver’s seat of his Monte Carlo. The officers returned to their own vehicle and waited while Weeks started his car, revved it for 10 seconds, and drove away. They then waited for an additional 15-20 seconds before making a U-turn and heading off in the opposite direction. There is no mention of any attempt by the officers to locate Weeks’ keys, either inside the vehicle or on the ground.
Defendants Bonomo and Lavio have moved for partial summary judgment on the issue of whether they were acting within *42 the scope of their employment. Based on the undisputed facts concerning the occurrence, and no proof to the contrary having been offered, the motion is granted and the court finds that said defendants were acting within the scope of their employment at the time of the incident.
As to the summary judgment motion by the City of New York (the City), movant takes the position that it owed no special duty to plaintiff, arguing that the elements of such special duty, as set forth in Cuffy v City of New York (69 NY2d 255), are not present. In response, respective counsel for plaintiffs in both actions point out that the Allan plaintiffs are not claiming a breach of special duty, and that a review of the complaint and the bill of particulars reveals that the Allan claim is one for “negligent entrustment,” providing, in pertinent part: “Defendant police officers bonomo and lavio, negligently, carelessly and recklessly caused, allowed, directed, instructed and permitted an obviously impaired and unqualified driver, to wit: the decedent michael weeks, to operate a motor vehicle on the public highways of the City of New York, in the face of aberrant, bizarre and criminal behavior on the part of decedent michael weeks, which conduct was exhibited in their presence and in the presence of others, and which signaled to the defendant police officers that his operation of a motor vehicle on the public highway made the same dangerous to life and limb to members of the public, including Plaintiffs Decedent; in carelessly and negligently entrusting a motor vehicle to the decedent michael weeks under the circumstances herein above enumerated” (plaintiff Allan’s summons and complaint, at 5; plaintiff Allan’s verified bill of particulars, at 2).
At one time, tort actions against the City were subject to dismissal because of government immunity. However, after 1929, by statute (then former Court of Claims Act § 12-a), municipalities waived this defense and became “answerable equally with individuals and private corporations for wrongs of officers and employees” (Bernardine v City of New York, 294 NY 361, 365, cited in Motyka v City of Amsterdam, 15 NY2d 134, 138). The rule, however, is well settled that even without sovereign immunity, a municipality is not liable to an individual for the breach of a duty that the municipality owes to the public at large, such as the general failure to supply police or fire protection (Motyka v City of Amsterdam, supra; Evers v Westerberg, 38 AD2d 751, and cases cited therein). A plaintiff may demonstrate that the municipality owes a special duty to him individually by showing that a “special relationship” existed *43 between himself and the municipality. In Cuffy v City of New York (69 NY2d 255, supra), the Court of Appeals set out the elements required to show the existence of that “special relationship” by virtue of which a plaintiff can show that he justifiably relied on the municipality to affirmatively undertake the actions in question. The City correctly argues that in the case at bar no special duty to Julia Allan existed because one of those required elements, direct contact between Julia Allan and the police officers, is clearly missing.
The Allan plaintiffs argue, however, that the “special relationship” doctrine is not relevant to this case because they are not alleging that the municipality breached a duty owed to the public at large, which is the general rule that the City relies upon for immunity here. It follows that if that rule is not applicable, neither is the “special relationship” exception to it.
The court is cognizant of, and in agreement with, the policy considerations which gave rise to the general rule noted above. According to the Court of Appeals, when the Legislature enacts laws that require a city to provide services one may not impute from such enactments “[a]n intention to impose upon the city the crushing burden” that would result if each individual could claim civil liability for neglect in the performance of such services (Steitz v City of Beacon, 295 NY 51, 55). The rule, and its “special relationship” exception, are acknowledgments of the limited resources that the municipality has and its inability to be in all places at one time (Rodriguez v City of New York, 189 AD2d 166).
The intent of this policy, however, is not served by extending immunity to the municipality for all acts of negligence performed by its police officers (cf, Lubelfeld v City of New York, 4 NY2d 455 [in which plaintiff, a taxicab driver, sued for personal injuries claiming he was shot without provocation by Police Officer Long, who had been placed in plaintiff’s cab by three other police officers who allegedly knew that Long was drunk and that Long had a loaded pistol]). At issue in the matter at bar is whether allowing the municipality to be held liable for the negligent acts alleged here, construed in a light most favorable to the nonmoving party for the purposes of this motion (Russell v A. Barton Hepburn Hosp., 154 AD2d 796), would undermine the policy concerns articulated in Steitz (supra).
As a general rule, if a police officer fails to stop a car that is being driven erratically or fails to remove an apparently incapacitated driver from the road, New York public policy would *44 not support a finding of municipal liability for a resulting accident (see, e.g., Shea v Town of Fishkill, 121 AD2d 375; Evers v Westerberg, 38 AD2d 751, supra; Crosby v Town of Bethlehem, 90 AD2d 134). It is not for the courts to mandate that the City expend the resources necessary to detain every incapacitated driver and it would create a “crushing burden” for the City to be held liable for the harm caused by every such driver that the police fail to remove from the stream of traffic. According to plaintiffs, however, the instant situation is different because the negligence of Police Officers Bonomo and Lavio does not arise from the failure to detain such a driver, but arises from the breach of a common-law duty to refrain from placing a thing (or activity) that is in one’s control in the hands of a person you have reason to know is likely to operate that thing (or engage in that activity) in a manner that will create a foreseeable risk of harm.
Whether one describes the action of a police officer who allows an apparently incapacitated person to operate a motor vehicle as a failure to detain or as negligent entrustment, the result is the same, i.e., the likelihood of foreseeable harm. The attempt to distinguish these acts by relying on characterizing the conduct at issue as either nonfeasance or misfeasance (Haggerty v Diamond, 251 AD2d 455, citing to Rodriguez v City of New York, 189 AD2d 166, supra) can lend to semantic contortions. The essence of the difference is whether the dangerous condition existed independent of police intervention. The policy considerations that support municipal immunity with respect to the breach of a duty owed to the public at large are relevant to situations in which the conduct of a police officer fails to ameliorate a dangerous condition that already exists. Thus the City will not generally be held liable for a police officer’s failure to protect. However, these policy considerations are not served in a situation where, as here, the dangerous condition does not exist before police intervention, but is then created by the negligent acts of police officers. In such instances, rather than applying principles of governmental immunity to shield the City from liability, principles of general tort liability should prevail.[3]
According to plaintiffs, municipal liability should attach for the foreseeable harm that resulted when Police Officers Bo *45 nomo and Lavio, in the exercise of their authority, assumed control of a situation involving an apparently incapacitated individual and a motor vehicle, and repeatedly placed that incapacitated individual in the driver’s seat of that motor vehicle, enabling or directing him to operate it. Considering the nature of the alleged actions here, the claim will be treated as one for negligent entrustment for which the City may be held liable. Before these police officers intervened, a naked man in the roadway was acting erratically; after their intervention, allegedly as a result of their negligence, an incapacitated driver caused a fatal accident.
As stated in Restatement (Second) of Torts § 308:
“Permitting Improper Persons to Use Things or Engage in Activities
“It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.”
Based on the definition provided above, to impose liability under a negligent entrustment theory, plaintiff would have to demonstrate: (1) that defendant had control over a thing or activity; (2) that defendant permitted or enabled another person to use the thing or engage in the activity; (3) that defendant had special knowledge concerning a characteristic or condition peculiar to said other person, which characteristic rendered said person’s use of the thing, or conduct in the activity, likely to create unreasonable risk of harm to others; and (4) that the harm sustained by plaintiff was a result of the risk thus created.
The particular issue of a police officer entrusting the operation of a motor vehicle to a person that officer allegedly had reason to know was incapacitated and was likely to operate it in such a manner as to create an unreasonable risk of harm was addressed in both Snyder v City of Rochester (124 AD2d 1019) and Maloney v Scarfone (25 AD2d 630). In Maloney, which involved liability to a third party, a police officer directed a 17-year-old unlicensed individual to move a car in which he *46 was seated. The 17 year old drove the.car away and struck a pedestrian. The jury returned a verdict against all defendants: the City, the driver and the car owner. The Appellate Division, First Department, did not question the existence of a cause of action against the City but modified and directed a new trial against the City because the record was not satisfactory as to whether the police officer was aware that the driver was unlicensed and inexperienced (that is, whether the police officer had knowledge of a characteristic that rendered defendant’s use of the car unreasonably dangerous). In Snyder, which involved a one-car collision, a police officer gave car keys to a woman and directed her to remove her boyfriend’s car from the scene, in spite of her intoxicated condition and the boyfriend’s pleas to call a tow truck. Citing to Maloney, the Court in Snyder found that “[1] lability may be imposed upon a municipality where such voluntary acts [by a police officer] are a substantial factor in causing the accident and the occurrence of an accident was reasonably foreseeable” (Snyder v City of Rochester, 124 AD2d 1019, 1019-1020, citing Maloney v Scarfone, 25 AD2d 630).
The instant case differs from Snyder and Maloney (supra) in that the incapacitated person was placed in the position of operating his own car and no one is alleging that they heard the officers orally direct him to operate it. These, however, are not distinctions that would necessarily negate a claim of negligent entrustment. As long as an actor has the necessary control, entrustment can be inferred from the actor’s conduct (arguably, in the instant case, from actions like repeatedly placing Weeks in the driver’s seat of his car, and/or returning his keys or failing to check for them in the car or in the belongings returned to him, and/or by enabling or directing him to drive away).
Summary judgment is a drastic remedy depriving the other party of a trial. The movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any factual issues from the case (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853; see also, Rotuba Extruders v Ceppos, 46 NY2d 223).
Construing the facts in a light most favorable to plaintiffs, a trier of fact could conclude that the elements necessary to establish a claim for negligent entrustment are present in this case. Movant has failed to demonstrate that plaintiffs have no cause of action under a negligent entrustment theory as a matter of law, and there are issues of material fact with respect to *47 this cause of action that preclude granting summary judgment.
Accordingly, as to the City’s motion for summary judgment, it is denied.

. The statements of the two officers that are attached to the moving papers are not sworn to; however, their sworn version of these events appears in the record in the transcript of an examination before trial, attached to plaintiffs’ affirmation in opposition as exhibit 2.

. It is noted by plaintiffs in the Allan action that during an examination before trial in this action it was admitted that at an administrative hearing both police officers had pleaded nolo contendere to the charge that their statements with respect to this incident were false.

. The court notes that the City does not argue that Police Officers Bonomo and Lavio are immune from liability because their acts constitute “judgmental error” in the exercise of a government function. This rule is meant to protect municipal agents from liability for the exercise of reasoned judgment in the performance of discretionary acts CRodriguez v City of New *45 York, 189 AD2d 166, supra). In any event, such an argument would not alter the result here unless the City is prepared to argue that the police officers in question were acting in accord with reasonable and accepted practice (Desmond v City of New York, 219 AD2d 576).