OPINION OF THE COURT
J. Scott Odorisi, J.
This lawsuit arises out of the 2012 West Webster Christmas Eve ambush and the resulting deaths and personal injuries to first responders. Pending before this court are: (1) defendant Gander Mountain Company, Inc.’s August 25, 2014, motion to dismiss; and, (2) plaintiffs’ September 18, 2014, motion for the release of the grand jury minutes of the state criminal prosecution of defendant Dawn Nguyen.[1]
This court hereby: (1) denies in large part and grants only in limited part Gander Mountain Company, Inc.’s dismissal motion; and, (2) grants only in limited part plaintiffs’ motion for release of the grand jury minutes — all for the reasons set forth hereinafter.
*868 Lawsuit Facts
Background Information[2]
On June 6, 2010, defendant Dawn Nguyen agreed to buy guns for decedent William Spengler — a convicted manslaughter felon. Nguyen and Spengler were present together at defendant Gander Mountain Company, Inc.’s (Gander) Henrietta store perusing long guns. When the pair was approached by a salesperson, Spengler, not Nguyen, refused any assistance. Nguyen ultimately bought two firearms — a Bushmaster semiautomatic rifle and a Mossberg 12 gauge shotgun — by paying $1,425.58 in cash, which was provided by Spengler. To finalize the sale, and with Spengler present, Nguyen completed certain required forms attesting that she was the true gun purchaser and intended end user. Nguyen did not buy any ammunition or make any other inquires about operation of the guns. Spengler took the guns off of the counter and left the store with them, and Nguyen never again possessed them.[3]
In the early morning hours of December 24, 2012, Spengler killed his sister, set his West Webster home on fire, and then used the same Bushmaster rifle Nguyen bought from Gander to shoot volunteer firefighters Michael Chiapperini, Tomasz Kaczowka, Joseph Hofstetter, and Theodore Scardino, who were all responding to a 911 dispatch. Tragically, Chiapperini and Kaczowka died and Hofstetter and Scardino were seriously injured. Spengler committed suicide before being apprehended.
On April 4, 2013, Nguyen was indicted in state court for falsifying business records in the first degree (Penal Law § 175.10). Nguyen was also charged federally. On April 15, *869 2014, Nguyen was convicted in state court after a jury trial.[4] Thereafter, and on June 26, 2014, Nguyen pleaded guilty in federal court to the whole indictment, namely: (1) making a false statement in relation to the acquisition of firearms (18 USC § 922 [a] [6]); (2) disposition of firearms to a convicted felon (18 USC § 922 [d] [1]); and, (3) possession of firearms by an unlawful user (18 USC § 922 [g] [3]).[5] One of the theories of criminal liability in both cases was that Nguyen falsified the forms to deceive Gander as to the identity of the true end user, which fraudulent intent also included an intent to conceal a crime.[6]
Procedural History
The present action was commenced on May 20, 2014, and in general alleges that Gander unlawfully sold the guns to both Nguyen and Spengler as it knew, or should have known, it was an illegal straw purchase for an improper buyer given Spengler’s involvement (Paulino attorney affirmation, exhibit A, ¶¶ 1, 3, 44, 55). More specifically, the complaint contains the following causes of action, which plaintiffs designated as “Counts”:
1. Negligence against Gander;
2. Negligent entrustment against Gander;
3. Negligent entrustment against Nguyen;
4. Assault and battery against Spengler’s estate;
5. Negligence per se against Gander;
6. Negligent training and supervision against Gander;
7. Public nuisance against Gander;
8. Loss of consortium against all defendants (Karen Scardino);
9. Wrong death of Chiapperini against all defendants;
10. Wrong death of Kaczowka against all defendants;
11. Survival action for Chiapperini against all defendants; and,
*870 12. Survival action for Kaczowka against all defendants. (Paulino attorney affirmation, exhibit A at 13-26.)
In the complaint’s wherefore clause, plaintiffs ask for “an Order compelling Gander Mountain to reform its policies, procedure and training with regard to the sale of firearms, including taking steps necessary to prevent unlawful sales to straw purchasers.” (Paulino attorney affirmation, exhibit A at 26.) Plaintiffs also seek compensatory and punitive damages, costs and disbursements, and attorneys’ fees.
Gander was served via its registered agent with the pleadings on May 21, 2014.
The next day, Gander filed a notice of removal taking this case to the United States District Court for the Western District of New York on the basis that it involved a federal question. On June 11, 2014, Gander filed a motion to dismiss and/or strike in District Court. On June 12, 2014, plaintiffs cross-moved to remand the matter back to state court. Gander opposed the remand motion, inter alia, on the basis that a local state court judge would be biased in this highly publicized case, would act to garner support for re-election, and would misapply federal law (plaintiffs’ mem of law, exhibit 1 at 3, 19; exhibit 2 at 18, 23-25, 29, 30, 32).[7]
[8]On July 28, 2014, the remand motion was argued before Judge David G. Larimer who granted it by way of an order dated August 5, 2014.® Motion Contentions Summary
Gander’s Dismissal Motion
Instead of answering, and relying upon CPLR 3024 and 3211, Gander moved to dismiss the case on the following grounds:
1. The entire complaint is barred by the federal Protection of Lawful Commerce in Arms Act (PLCAA).
2. The claims for negligent entrustment and public nuisance failed to state viable causes of action.
*871 3. Plaintiffs’ references in the complaint to “extra legal” standards promulgated by private parties should be stricken as prejudicial and unnecessary.
4. Plaintiffs’ demand for a permanent injunction compelling Gander to reform its policies should be stricken.
In support of its motion, Gander submitted an affidavit from Kevin R. McKown, its senior director of regulatory and firearm compliance, in which he provided information about Gander’s unified and nationwide firearms sale training program, as well as about the subject firearms (McKown aff ¶¶ 4, 7-8, 11, 13-16).
Plaintiffs strenuously opposed the dismissal motion on the following grounds:
1. Per binding Fourth Department precedent, Williams v Beemiller, Inc. (100 AD3d 143 [4th Dept 2012] [hereinafter Williams 7], amended by 103 AD3d 1191 [4th Dept 2013] [hereinafter Williams II]), exceptions apply that remove this case from PLCAA’s preemption.
2. Plaintiffs sufficiently alleged valid claims for negligent entrustment and public nuisance given Gander’s direct dealings with Spengler. (See also Williams II, 103 AD3d 1191.)
3. The protocols issued by the National Shooting Sports Foundation (NSSF), in conjunction with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), should not be stricken from the complaint because they are highly relevant in defining Gander’s standard of care.
4. Gander’s vagueness challenge to the request for a permanent injunction is premature, and this court has the authority to issue injunctive relief that impacts actions outside of the state.
In its reply, Gander wholly failed to address the Williams I case in regard to its main PLCAA preemption argument.
Plaintiffs’ Grand Jury Motion
Plaintiffs moved under Criminal Procedure Law § 190.25 (4) (a) and Judiciary Law § 325 for release of the grand jury minutes of Nguyen’s state criminal case — People of the State of New York v Dawn M. Nguyen (indictment No. 13/269). As it is believed that Gander employees testified before the grand jury, as well as other alleged material witnesses, plaintiffs contend that the minutes are essential to their civil action. Plaintiffs argue that there is no reason to keep this grand jury proceeding secret any longer.
*872 The Monroe County District Attorney’s Office opposed the motion by a letter dated October 9th, but no party interposed a response.
Legal Discussion
Gander’s Dismissal Motion
Gander invokes only CPLR 3211 (a) (7) to dismiss the whole lawsuit, but that application falters. (See e.g. Sokoloff v Harriman Estates Dev. Corp., 96 NY2d 409, 414 [2001] [reversing granted CPLR 3211 (a) (7) motion as the complaint adequately alleged a claim]; Matter of City of Syracuse v Comerford, 13 AD3d 1109, 1110 [4th Dept 2004] [same].)
In determining a CPLR 3211 (a) (7) motion, the subject pleading is to be afforded a liberal construction. (See CPLR 3026; Leon v Martinez, 84 NY2d 83, 87 [1994] [motion to dismiss should have been denied]; 190 Murray St. Assoc., LLC v City of Rochester, 19 AD3d 1116 [4th Dept 2005] [reversing order granting motion to dismiss].) Under this liberal construction, “[t]he facts pleaded are to be presumed to be true and are to be accorded every favorable inference” in a plaintiff’s favor to see if they fit within any cognizable legal theory. (Younis, 60 AD3d at 1373 [affirming denial of motion to dismiss] [emphasis added]; see also 511 W. 232nd Owners Corp., 98 NY2d at 152 [the complaint was sufficient to survive a motion to dismiss].) Thus, the criterion is whether the plaintiff has a cause of action, not whether he or she properly stated one. (See Guggenheimer v Ginzburg, 43 NY2d 268, 275 [1977] [reversing grant of motion to dismiss]; Matter of Syracuse Indus. Dev. Agency v Gamage, 77 AD3d 1353, 1354 [4th Dept 2010] [affirming denial of dismissal motion].)
With the above lenient standard in mind, each of Gander’s motion contentions will be addressed.
1. PLCAA Preemption
Gander is not entitled to a dismissal based upon the PLCAA. (See e.g. Williams I, 100 AD3d at 147 [Supreme Court erred in dismissing the complaint per the PLCAA].) As in Williams I, the PLCAA does not serve as a basis to dismiss the instant complaint.[9]
The PLCAA went into law on October 26, 2005. (See 15 USC § 7901.) Its purpose was to shield gun sellers from civil liability *873 for “harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended.” (See 15 USC § 7901 [b] [1]; see also Ileto v Glock, Inc., 565 F3d 1126, 1129 [9th Cir 2009].) To achieve its purpose, the PLCAA forbids the commencement of any “qualified civil liability action” in federal or state court. (15 USC § 7902 [a]; see also City of New York v Beretta U.S.A. Corp., 524 F3d 384, 398 [2d Cir 2008].) A “qualified civil liability action” is defined as:
“a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party” (15 USC § 7903 [5] [A]; see also 15 USC § 7903 [4] [“qualified product” is a firearm “that has been shipped or transported in interstate or foreign commerce”]; 15 USC § 7903 [6] [“seller” is a federally licensed dealer]; 15 USC § 7903 [9] [“unlawful misuse” is “conduct that violates a statute, ordinance, or regulation as it relates to the use of a qualified product”]).[10]
The case at hand falls squarely within the “qualified civil liability action” definition. However, six categories of actions are exempt, and the two exemptions relevant to this case are as follows:
“(ii) an action brought against a seller for negligent entrustment or negligence per se;
“(iii) an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing *874 of the product, and the violation was a proximate cause of the harm for which relief is sought, including .. .
“(I) any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to the lawfulness of the sale or other disposition of a qualified product; or
“(II) any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18” (15 USC § 7903 [5] [A] [emphasis added]).
As to the second exception for negligent entrustment or negligence per se, two exact claims plaintiffs allege in counts 2 and 5, Gander simply states that the “second exclusion speaks for itself,” and then never again mentions the same (Gander mem of law at 10; see also id. at 18). This court construes this as an implied concession that counts 2 and 5 fall outside of the “qualified civil liability action” definition. Thus, and at this preliminary stage of litigation, those two claims are not preempted by the clear language of the statute. (See McKinney’s Cons Laws of NY, Book 1, Statutes §§ 76, 94; Matter of Tall Trees Constr. Corp. v Zoning Bd. of Appeals of Town of Huntington, 97 NY2d 86, 91 [2001] [“(w)here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning”]; see also Herdzik v Chojnacki, 68 AD3d 1639, 1642 [4th Dept 2009] [reinstating negligence per se claim].)
In light of the unambiguous language of the second exception, Gander is forced to focus on assailing the third exception in an attempt to knock out the remaining claims. The third exception is referred to as the “predicate exception” because it requires that a plaintiff also allege “a knowing violation of a ‘predicate statute,’ i.e., a state or federal statute applicable to the sale or marketing of firearms.” (Williams I, 100 AD3d at 148; see also Martin v Herzog, 228 NY 164, 168 [1920].)
*875 In Williams I, the Fourth Department, in applying the liberal pleading standard, found that the plaintiffs sufficiently alleged knowing violations of federal and state law in order to have the first amended complaint fall under the PLCAA’s predicate exception. (See Williams I, 100 AD3d at 148.) Based upon a review of the first amended complaint in Williams, those plaintiffs generically alleged violations of federal and state law without providing specific statutory provisions (see Williams appellate record at 112). Nevertheless, the Fourth Department disregarded the lack of citations and still found sufficient facts to make out a statutory violation of the federal Gun Control Act of 1968. (Id. at 149.) Unlike Williams, the plaintiffs here went a step further and cited specific federal gun laws Gander allegedly violated in support of its general negligence claim in count 1 and negligence per se claim in count 5 (Paulino attorney affirmation, exhibit A, ¶¶ 77, 79, 85, 94, citing 18 USC §§ 2, 371, 922 [a] [1] [A]; [6]; [d] [1]; [g] [1]; [m]; 924 [a] [1] [A]).[11]
Gander claims the cited federal statutes are either “unrelated” or “impossible” for it to have violated, or to have proximately caused Spengler’s crimes. Without the benefit of discovery, this court is not convinced that it can be definitively stated that all of these federal laws do not apply, or were not related to Spengler’s ambush. Proximate cause is normally a question of fact for a jury (see Williams I, 100 AD3d at 152; Williams II, 103 AD3d at 1192; Johnson v Ken-Ton Union Free School Dist., 48 AD3d 1276, 1277 [4th Dept 2008]; Hughes v Temple, 187 AD2d 956 [4th Dept 1992]), and the fact that plaintiff might ultimately fail on some alleged violations does not render the initial pleading defective. (See EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11, 19 [2005] [“(w)hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss”]; Campaign for Fiscal Equity v State of New York, 86 NY2d 307, 318 [1995]; Stukuls v State of New York, 42 NY2d 272, 275 [1977].)
Additionally, and contrary to Gander’s contention that 18 USC § 922 (m) cannot conceivably apply, the Fourth Department found that the exact same alleged violation can occur *876 when a seller knows, or has reason to believe, that the information entered on the ATF Form 4473 is false, including information about the actual buyer. (See Williams I, 100 AD3d at 149-150, citing 27 CFR 478.124; Shawano Gun & Loan, LLC v Hughes, 650 F3d 1070, 1073 [7th Cir 2011]; United States v Nelson, 221 F3d 1206, 1209 [11th Cir 2000]; see also Abramski v United States, 573 US —, 134 S Ct 2259 [2014].) The Fourth Department further found potential accomplice liability for a gun seller aiding and abetting a buyer’s false statements. (Williams I at 150, citing 18 USC § 2 [a]; United States v Carney, 387 F3d 436, 445-446 [6th Cir 2004].) As in Williams I, plaintiffs here aver that Gander knew the sale was an illegal straw purchase to a person not legally authorized to possess a gun given certain red flags. (See Williams I, 100 AD3d at 150 [felon selected guns, which were paid for in cash, although the straw purchaser filled out the forms].) Given the Fourth Department’s express allowance of an accomplice liability theory, Gander’s taking offense to an alleged conspiracy is unavailing (Gander’s mem of law at 3). Additionally, Gander’s motion denial of any aid and assistance simply creates an issue of fact worthy of discovery (Gander’s mem of law at 19; see Carney v Memorial Hosp. & Nursing Home of Greene County, 64 NY2d 770, 772 [1985]; Cinelli v Sager, 13 AD2d 716 [4th Dept 1961] [reversing grant of a dismissal as issues of fact existed]).
Furthermore, Williams I is also instructive in rejecting yet another of Gander’s submissions, namely its piecemeal attack on each claim, particularly the negligent training and supervision claim (count 6) and the public nuisance claim (count 7). Consistent with plaintiffs’ position that as long as one PLCAA exception applies to one claim the entire action continues, the Fourth Department in Williams I declined to address another PLCAA exception to sustain the remaining claims. (See Williams I, 100 AD3d at 151.) Having found one applicable PLCAA exception, the Fourth Department allowed the entire case to go forward, including a public nuisance claim. (See Williams II, 103 AD3d at 1191.) Similar to Williams, this court finds two applicable PLCAA exceptions thereby permitting the entire complaint to proceed through litigation, without the need for a claim-by-claim PLCAA analysis.
Despite the obvious implication of Williams I, Gander continually ignored the case in the context of its PLCAA preemption argument written filings, although it appears per the federal court proceedings that Williams I was a motivating factor for *877 keeping this case out of state court (plaintiffs’ mem of law, exhibit 1 at 2, 27-30). Gander argued before Judge Larimer that Williams I was a “wholesale subversion” of federal law, and that a federal judge was needed in order to deviate from its holding (plaintiffs’ mem of law, exhibit 2 at 24). Even if Gander disagrees with Williams I, it is up to the Fourth Department to reconsider the same on an appeal from this dismissal motion denial. In the meantime, Williams I is stare decisis on Gander’s primary PLCAA preemption argument, and this court is obligated to follow the same. (See Matter of Philadelphia Ins. Co. [Utica Natl. Ins. Group], 97 AD3d 1153, 1155 [4th Dept 2012].)
Moreover, Gander’s last-minute suggestion at Special Term that Williams I is inapplicable because it involved a different legal theory is incorrect. Just as here, the gun seller (defendant Brown) in Williams I also moved under CPLR 3211 (a) (7) to dismiss based upon a PLCAA preemption contention (see Williams’ appellate record at 199; defendant Brown’s appellate brief at 1; Williams I, 100 AD3d at 146). Although lack of personal jurisdiction was also an issue for defendant Brown in the Williams I case, it was not the sole basis for his motion as claimed by Gander at oral argument. Therefore, having failed to distinguish Williams I on legal grounds, Gander remains bound by its mandatory precedential authority.
Lastly, Gander’s emphasis on Nguyen’s convictions to relieve it of liability is misplaced (Gander mem of law at 3, 4, 19-20). First, Nguyen’s state and federal convictions in no way negate Gander’s independent civil liability given the completely different elements. Second, Gander’s statement about never having been criminally charged in relation to the Nguyen sale does not foreclose civil liability, which involves a much lower standard of proof (Gander mem of law at 4). Third, Gander consistently misclassifies Nguyen’s crimes as fraud, with it being the victim, which the state court jury found was defrauded (Gander mem of law at 4). Nguyen was not charged with fraud, and her convictions in no way exonerate Gander, or involved an express finding that it was fooled. In other words, Nguyen’s criminal acts in no way relieve Gander of having taken steps to uncover the same as plaintiffs allege. In the Williams case, the straw purchaser (defendant Upshaw) was convicted of a misdemeanor, but the civil case against the seller still proceeded (see Williams’ appellate record at 19, 73). Therefore, the criminal dispositions against Nguyen do not protect Gander and insulate it from civil litigation.
*878 In sum, this court refuses to dismiss the complaint under the PLCAA. (See Williams I, 100 AD3d at 147.)
2. Negligent Entrustment and Public Nuisance
As an alternative to the PLCAA preemption argument, Gander seeks to dismiss the public nuisance (count 7) and negligent entrustment (count 2) claims as failing to state valid causes of action. This alternative assertion also falters.
As noted above, the public nuisance claim in Williams II was sustained in a case involving a sale of numerous handguns. (See Williams II, 103 AD3d at 1191.) Nevertheless, the sale in this case involved two assault-style weapons in an illegal sale that had disastrous direct consequences for plaintiffs above and beyond those suffered by the community at large. This is sufficient to sustain the public nuisance claim in count 7.
The Court of Appeals defined a public nuisance as:
“an offense against the State and is subject to abatement or prosecution on application of the proper governmental agency ... It consists of conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all . . . in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons” (Copart Indus, v Consolidated Edison Co. of N.Y., 41 NY2d 564, 568 [1977] [emphasis added]; see also Williams II, 103 AD3d at 1192).
To allow an individual to prosecute a public nuisance claim, he or she must show that they “suffered special injury beyond that suffered by the community at large.” (532 Madison Ave. Gourmet Foods v Finlandia Ctr., 96 NY2d 280, 292 [2001]; see also Baity v General Elec. Co., 86 AD3d 948, 951 [4th Dept 2011] [declining to dismiss public nuisance claim].) This court finds that plaintiffs alleged sufficient requisite special injury given the deaths of Mr. Chiapperini and Mr. Kaczowka, and the serious physical injury to Mr. Hofstetter and Mr. Scardino. (See e.g. Booth v Hanson Aggregates N.Y., Inc., 16 AD3d 1137, 1138 [4th Dept 2005] [reinstating public nuisance claim due to proof of special injury to the plaintiffs]; see also Williams II, 103 AD3d at 1192.)
Despite these glaring special injury allegations, Gander seeks to escape liability for a public nuisance by claiming that it *879 owed no specific duty to plaintiffs, citing Hamilton v Beretta U.S.A. Corp. (96 NY2d 222 [2001]), in which the Court of Appeals concluded that gun manufacturers did not owe a duty of reasonable care to persons injured by illegally obtained handguns. Based upon Hamilton, Gander asserts that it has no liability for Spengler’s actions. In response, plaintiffs contend that Hamilton’s holding does not compel a dismissal because there the plaintiff could not identify the actual gun manufacturer thus there was no direct link to Beretta. Juxtaposed to Hamilton, here it is uncontested that Gander sold the Bushmaster, and that it also had direct interactions with Spengler.[12] This exact same distinction was drawn in Williams I as the basis to distinguish and disregard Hamilton. (See Williams I, 100 AD3d at 151-152; see also City of New York v A-1 Jewelry & Pawn, Inc., 247 FRD 296, 348 [ED NY 2007] [permitting public nuisance claim to proceed against pawnbroker for illegal gun sales].) Accordingly, Gander’s heavy reliance on Hamilton as legal authority supporting a dismissal is erroneous.
As to the negligent entrustment claim in count 2, the PLCAA defines that as:
“the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.” (15 USC § 7903 [5] [B].)
New York’s negligent entrustment cause of action provides:
“The tort of negligent entrustment is based on the degree of knowledge the supplier of a chattel had or should have had concerning the entrustee’s propensity to use the chattel in an improper or dangerous fashion ... If such knowledge can be imputed, the supplier owes a duty to foreseeable parties to withhold the chattel from the entrustee” (Earsing v Nelson, 212 AD2d 66, 69-70 [4th Dept 1995] [affirming denial of motion to dismiss negligent entrustment claim] [emphasis added]; see also Weeks v City of New York, 181 Misc 2d 39, 46 [Sup Ct, Richmond County 1999] [declining to dismiss *880 negligent entrustment claim]; Restatement [Second] of Torts § 390).
Gander challenges the negligent entrustment claim on the same basis as the public nuisance claim, namely that it cannot have limitless liability, again citing Hamilton. As Hamilton has been dispelled by Williams I, it does not serve as a basis to warrant dismissal of the negligent entrustment cause of action.
Also, Gander submits that it cannot be strictly liable for Spengler’s actions of which it had no special knowledge. This court disagrees. According to plaintiffs’ allegations (see 511 W. 232nd Owners Corp., 98 NY2d at 152; Younis, 60 AD3d at 1373), Gander should have known of Spengler’s criminality if it had taken the appropriate steps in light of the red flags. Those red flags include: Spengler’s presence and his taking the initiative to refuse assistance; the cash payment for the weapons; Nguyen’s failure to inquire about ammunition and proper operation; and, Spengler taking possession of the guns right at the sales counter and leaving with them.[13] These red flags could suggest that Spengler was not a lawful gun owner, and plaintiffs should be allowed to test this claim through discovery. (See Earsing, 212 AD2d at 69-70; Splawnik v Di Caprio, 146 AD2d 333, 335-336 [3d Dept 1989] [refusing to dismiss negligent entrustment claim].) Gander’s reply contention that these red flags are just as capable of an “innocuous interpretation as they are a criminal one” is unpersuasive to require dismissal at this very early stage of the litigation (Gander’s reply mem of law at 10). As already acknowledged, a complaint’s al legations must be “accorded every favorable inference” in a plaintiff’s favor. (Younis, 60 AD3d at 1373 [emphasis added]; see also 511 W. 232nd Owners Corp., 98 NY2d at 152.) Consequently, and at this preliminary pleading stage, plaintiffs are entitled to the criminal inference to permit its pleading to withstand a dismissal. (See e.g. J.P. Morgan Sec. Inc. v Vigilant Ins. Co., 21 NY3d 324, 338 [2013] [setting aside granted CPLR 3211 dismissal motion]; Bergler v Bergler, 288 AD2d 880 [4th Dept 2001] [affirming denial of CPLR 3211 (a) (7) motion].)
*881 In all, Gander cannot secure dismissal of the public nuisance and negligent entrustment claims. (See Williams II, 103 AD3d at 1191; Earsing, 212 AD2d at 70.)
3. Protocols
Gander is not entitled to have the NSSF protocols removed from the complaint. (See e.g. Bristol Harbour Assoc. v Home Ins. Co., 244 AD2d 885, 886 [4th Dept 1997] [the lower court did not abuse its discretion in denying motion to strike allegation that the defendant violated the law in insurance policy dispute].) As in Bristol, striking of the NSSF protocols is not warranted.
The subject NSSF protocols are noted at paragraphs 64 and 65 of the complaint and discuss a program called “Don’t Lie for the Other Guy,” and which discuss additional steps a gun seller should take to combat improper sales.
The CPLR provides that “[a] party may move to strike any scandalous or prejudicial matter unnecessarily inserted in a pleading.” (See CPLR 3024 [b] [emphasis added].) “ ‘Unnecessarily’ is the key word,” and is akin to “irrelevant.” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3024:4; see also New York City Health & Hosps. Corp. v St. Barnabas Community Health Plan, 22 AD3d 391 [1st Dept 2005] [modifying by denying motion to strike].) Motions to strike “are not favored, rest in the sound discretion of the court and will be denied unless it clearly appears that the allegations attacked have no possible bearing on the subject matter of the litigation.” (Vice v Kinnear, 15 AD2d 619, 619-620 [3d Dept 1961] [emphasis added]; see also Hewitt v Maass, 41 Misc 2d 894, 897 [Sup Ct, Suffolk County 1964].)
Under the above standard, Gander’s strike request cannot withstand judicial scrutiny. (See e.g. Knibbs v Wagner, 14 AD2d 987 [4th Dept 1961] [sustaining denial of motion to strike evidentiary matters which were relevant and thus not prejudicial].) Gander objects to the NSSF reference because they are not yet proven industry standards, and thus are not yet relevant to its standard of care, citing Wegman v Dairylea Coop. (50 AD2d 108, 111 [4th Dept 1975]).[14] This court agrees with plaintiffs that Wegman, which predates Bristol Harbour Assoc., *882 L.P., is distinguishable and does not mandate the granting of Gander’s application. More specifically, the Fourth Department struck allegations about violations of statutes and regulations governing milk production as they had no bearing upon the breach of contract action. Unlike Wegman, the NSSF protocols are relevant to Gander’s standard of care which is a necessary component to the general negligence claim, among other things.[15] (See generally Miner v Long Is. Light. Co., 40 NY2d 372, 381 [1976] [compliance with customary or industry practices is not dispositive of due care but constitutes only some evidence thereof].) Accordingly, Wegman is not controlling, and the more recent case of Bristol Harbour Assoc., L.P. should be followed instead to permit the allegations to stand.
In sum, Gander’s request to strike is denied. (See e.g. Rice v St. Luke's-Roosevelt Hosp. Ctr., 293 AD2d 258, 259 [1st Dept 2002] [ruling that allegations were not so scandalous or prejudicial to warrant being stricken per CPLR 3024 (b)].)
4. Permanent Injunction
Gander’s final application is to remove the stand-alone permanent injunction request because it is vague, beyond this court’s jurisdiction, and lacking the requisite elements for such a claim. Only the last contention justifies striking, without prejudice, the prayer for permanent injunctive relief. (See e.g. DiPizio Constr. Co., Inc. v Erie Canal Harbor Dev. Corp., 120 AD3d 909 [4th Dept 2014] [vacating order granting injunctive relief].)
There is no separate cause of action for a permanent injunction thereby making the request at complaint paragraph 5 and in the wherefore clause an apparent orphan (Paulino attorney affirmation, exhibit A at 13-26). At Special Term, plaintiffs clarified that the injunctive relief was tied just to their public nuisance claim in count 7. (See generally Town of Amherst v Niagara Frontier Port Auth., 19 AD2d 107, 114 [4th Dept 1963] *883 [the plaintiff sought a permanent injunction in connection with public nuisance claim].) In general, permanent injunctive relief is appropriate in certain public nuisance scenarios, but not the one presently pleaded before this court.
Am application for a permanent injunction is an equitable request that is appropriate only upon a showing of threatened irreparable injury, the lack of an adequate remedy at law, and a balancing of equities in the movant’s favor. (See Kane v Walsh, 295 NY 198, 205-206 [1946]; Matter of Shanor Elec. Supply, Inc. v FAC Cont., LLC, 73 AD3d 1445, 1447 [4th Dept 2010]; Grogan v Saint Bonaventure Univ., 91 AD2d 855, 856 [4th Dept 1982].) The Fourth Department has decreed that
“[a] permanent injunction ‘is an extraordinary remedy to be granted or withheld by a court of equity in the exercise of its discretion. . . . Not every apprehension of injury will move a court of equity to the exercise of its discretionary powers. Indeed, “[e]quity . . . interferes in the transactions of [persons] by preventive measures only when irreparable injury is threatened, and the law does not afford an adequate remedy for the contemplated wrong” ’ ” (DiMarzo v Fast Trak Structures, 298 AD2d 909, 910-911 [4th Dept 2002] [emphasis added and citation omitted] [vacating permanent injunction]).
In this case, plaintiffs allege that Gander’s conduct, which forms the basis of the public nuisance claim, is continuing (Paulino attorney affirmation, exhibit A, ¶ 131). However, wholly absent from the public nuisance claim is any allegation that this continuing conduct poses a future irreparable injury to plaintiffs specifically, as opposed to the public in general (Paulino attorney affirmation, exhibit A, ¶¶ 128-138). Additionally missing is any allegation that plaintiffs’ other claims, which seek both monetary and punitive damages, will not fully compensate them for their past extraordinary harm. In fact, plaintiffs even concede that the other actions will provide relief, but claim that this eventuality is irrelevant (plaintiffs’ mem of law at 29). This is not a correct statement of the law, and it actually undercuts plaintiffs’ application for a permanent injunction. Finally, plaintiffs do not at all address a balancing of equities in their favor.
In all, and based upon the current complaint, this court strikes only the request for a permanent injunction.
*884 In conclusion of the dismissal motion, Gander must answer all of plaintiffs’ substantive claims, and the only portion of the complaint which is stricken is the permanent injunction application.
Plaintiffs’ Grand Jury Motion
Plaintiffs are likely entitled to only a very small portion of the grand jury minutes for the state prosecution of defendant Nguyen. (See e.g. Matter of Dunlap v District Attorney of Ontario County, 296 AD2d 856 [4th Dept 2002] [County Court did not abuse its discretion in denying the petitioner’s motion for disclosure of grand jury testimony]; SSAC, Inc. v Infitec, Inc., 198 AD2d 903 [4th Dept 1993] [sustaining release of grand jury minutes].)
The CPL governs grand jury minutes, and it provides in relevant part that
“[g]rand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding. . . . Such evidence may not be disclosed to other persons without a court order” (CPL 190.25 [4] [a] [emphasis added]; see also Judiciary Law § 325; Matter of District Attorney of Suffolk County, 58 NY2d 436, 444 [1983]).
A court has the limited discretion to order disclosure of grand jury minutes as part of discovery in a civil case. (See Matter of Lungen v Kane, 88 NY2d 861, 862 [1996].) However, and as the Court of Appeals articulated:
“disclosure may be directed when, after a balancing of a public interest in disclosure against the one favoring secrecy, the former outweighs the latter . . . But since disclosure is ‘the exception rather than the rule’, one seeking disclosure first must demonstrate a compelling and particularized need for access . . . However, just any demonstration will not suffice. For it and the countervailing policy ground it reflects must be strong enough to overcome the presumption of confidentiality. In short, without the initial showing of a compelling and particularized need, the question of discretion need not be reached, for then there simply would be no *885 policies to balance.” (Matter of District Attorney of Suffolk County, 58 NY2d at 444 [emphasis added and citations omitted]; see also People v Fetcho, 91 NY2d 765, 769 [1998]; People v Douglas, 288 AD2d 859 [4th Dept 2001].)
As the Fourth Department has decreed:
“At the opposite pole [from cases allowing access to vindicate public rights] are cases in which purely private civil litigants have sought inspection of Grand Jury minutes for the purpose of preparing suits. Although courts have recognized a limited right in civil litigants to use a trial witness’ Grand Jury testimony to impeach, to refresh recollection or to lead a hostile witness . . . wholesale disclosure of Grand Jury testimony for purposes of trial preparation has been almost uniformly denied to private litigants” (Matter of City of Buffalo [Cosgrove], 57 AD2d 47, 50 [4th Dept 1977] [emphasis added]; see also Matter of Loria, 98 AD2d 989 [4th Dept 1983]).
In making the discretionary balancing, a court is to consider:
“(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely.” (People v Di Napoli, 27 NY2d 229, 235 [1970]; see also Matter of Corporation Counsel of City of Buffalo [Cosgrove], 61 AD2d 32, 35-36 [4th Dept 1978].)
In the case at bar, plaintiffs have not demonstrated the requisite compelling and particularized need for the entire set of grand jury minutes. (See e.g. Matter of Carey [Fischer], 68 AD2d 220, 230 [4th Dept 1979] [lower court did not abuse its discretion in denying application to release grand jury evidence].) Plaintiffs seek all of the minutes on the basis that material witnesses appeared before the grand jury, and the minutes can be used on cross-examination and for impeachment of those witnesses. This generic claim concerning unidentified people is insufficient to warrant wholesale *886 disclosure of the entire grand jury presentation. (See Matter of U.S. Air, 97 AD2d 961, 962 [4th Dept 1983].) Even plaintiffs’ own case law recognizes this. (O’Brien attorney affirmation ¶ 7, citing Matter of Nelson v Mollen, 175 AD2d 518, 520 [3d Dept 1991].)
However, plaintiffs articulated a compelling and particularized need for some of the grand jury minutes related to the Gander representatives. (See e.g. Jones v State of New York, 79 AD2d 273, 277 [4th Dept 1981] [allowing release of grand jury minutes in a wrongful death case].) As shown by all of the motions papers, and as acknowledged at Special Term, plaintiffs have the ability to access the public trial transcript for Nguyen’s state prosecution. Thus, there is no need to disturb the grand jury process for those Gander witnesses, or any other witness. Despite this, and as represented at Special Term, plaintiffs understand that one Gander employee testified at grand jury but was not called at the time of trial. Therefore, it appears that only the grand jury minutes exist for this Gander employee, but this information has yet to be confirmed with the Monroe County District Attorney’s Office, which did not appear at oral argument. Consequently, this court’s limited release ruling is contingent upon confirmation of plaintiffs’ position. This court asks that the Monroe County District Attorney’s Office confirm in a letter to this court, and all of the parties, whether any grand jury minutes exist for a Gander employee who did not ultimately testify at trial. If this is confirmed to be accurate, and in light of plaintiffs’ serious accusations against Gander, and after the careful consideration of the factors enunciated in Di Napoli, this court directs the Monroe County District Attorney’s Office to provide just those select minutes within 30 days to the court for an in camera review before further release to the litigants. (See People v Gissendanner, 48 NY2d 543, 551 [1979].)
In sum, and subject to the above confirmation, plaintiffs’ motion is approved as to only grand jury testimony from any Gander representative who did not also testify at trial. (See Matter of Quinn [Guion], 293 NY 787, 788 [1944] [town residents were entitled to grand jury minutes]; Matter of Scotti, 53 AD2d 282, 288 [4th Dept 1976] [approving release of grand jury minutes].)
Conclusion
Based upon all of the foregoing, it is the decision and order of this court that:
*887 1. Gander’s dismissal motion is denied as to the PLCAA preemption contention and the failure to state valid claims as to the public nuisance and negligent entrustment causes of action. The application to strike the NSSF protocols from the complaint is also denied. However, Gander’s request to strike the permanent injunction relief is granted, but without prejudice. Accordingly, Gander is directed to answer the complaint within 10 days after service of notice of entry of this decision and order. (See CPLR 3211 [f].)
2. Plaintiffs’ motion for release of the grand jury minutes is denied, with the exception of the minutes of any testimony from a Gander witness who did not later testify at Nguyen’s trial. After confirmation, the court will conduct an in camera review.
In furtherance of this court’s discretion to oversee its cases, it is ordered the following scheduling order dates apply: discovery is to be completed by December 31, 2015; the note of issue is due by January 15, 2016; and, any summary judgment motions are due within 60 days after the note of issue filing. (See CPLR 3212 [a].)
Failure of the plaintiffs to file a note of issue and certificate of readiness by the date provided herein will result in this matter being deemed stricken “off” the court’s calendar without further notice pursuant to Uniform Rules for Trial Courts (22 NYCRR) § 202.27. If so dismissed, the case may be restored without motion within one year of such dismissal by: (1) the filing of a note of issue and certificate of readiness; and, (2) the forwarding of a copy thereof with a letter requesting restoration to the court’s assignment clerk. Also, restoration after one year shall, before the filing of a note of issue and certificate of readiness, require the additional documentation of a sworn affidavit by a person with knowledge showing a reasonable excuse for the delay, a meritorious cause of action, a lack of prejudice to the defendant, and the absence of intent to abandon the case. This court shall at anytime after the date listed above, entertain a defense motion to dismiss for want of prosecution which relief could include a dismissal of the complaint. This order shall serve as valid 90-day demand under CPLR 3216; and it is further ordered, that any extensions of the above deadlines will be granted only upon the showing of extreme good cause requested and approved prior to the above note of issue filing date.

. At Special Term, this court already denied plaintiffs’ September 17, 2014 cross motion to lift the automatic discovery stay. A separate decision and order, dated December 22, 2014, reflects that denial.

. Partly as alleged in the complaint and as accorded every favorable inference in plaintiffs’ favor. (See 511 W. 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002]; Younis v Martin, 60 AD3d 1373 [4th Dept 2009].)

. Gander objects to this information as hearsay provided by plaintiffs in opposition to dismissal (Gander’s reply mem of law at 2, 9). However, this information was first provided to this court by Gander in one of its own motion exhibits, namely Nguyen’s plea colloquy transcript (Paulino attorney affirmation, exhibit E at 18). This fact was repeated again in plaintiffs’ exhibit wherein, at Nguyen’s sentencing, her defense counsel once more stated that Nguyen transferred the guns to Spengler right at Gander’s sales counter (plaintiffs’ mem of law, exhibit 3 at 8, 18-19). Because Gander first introduced this information, its reply objection is erroneous, especially as it is also contrary to its original request that this court “consider extrinsic matter” (Gander’s mem of law at 6).

. Nguyen was sentenced on May 18, 2014, to lVs to 4 years, and is currently in state prison.

. At the time that Gander’s motion was filed, Nguyen had not yet been sentenced in federal court, but she was later sentenced on September 17, 2014, to eight years to run concurrently with the state sentence.

. The Monroe County District Attorney’s Office alleged, and the jury was instructed that, Nguyen intended to conceal the crime of criminal purchase of a weapon (Penal Law § 265.17) and/or criminal possession of a weapon in the fourth degree (Penal Law § 265.01) (Paulino attorney affirmation, exhibit C at 1033-1036).

. In opposing a remand, Gander expressed concern about Fourth Department precedent condoning claims against gun sellers and rejecting the identical federal law preemption argument (plaintiffs’ mem of law, exhibit 1 at 2, 27-30; exhibit 2 at 24). Also, Gander agreed that plaintiffs’ artfully drafted their complaint to avoid federal preemption (plaintiffs’ mem of law, exhibit 2 at 26). Plaintiffs accused Gander of forum/judge shopping (plaintiffs’ mem of law, exhibit 2 at 25).

. Because of the remand, Judge Larimer did not decide the dismissal motion; however, he quickly referenced his belief that federal law did not preempt all of plaintiffs’ claims (plaintiffs’ mem of law, exhibit 2 at 34-35).

. This court thoroughly reviewed the appellate record for the Williams cases, which had analogous straw sale facts and similar legal allegations.

. It is not disputed that the Bushmaster rifle and the Mossberg shotgun are “qualified products,” that Gander is a “seller,” and that Spengler engaged in an “unlawful misuse” of those guns. (See Al-Salihi v Gander Mtn., Inc., 2013 WL 5310214, 2013 US Dist LEXIS 134685 [ND NY, Sept. 20, 2013, No. 3:11-CV-00384 (NAM/DEP)] [granting Gander’s unopposed summary judgment motion per the PLCAA for an entirely legal sale when completed discovery showed no factual dispute as to whether it knew, or should have known, that the legal purchaser would eventually use the gun illegally].) The Al-Salihi case has material factual differences, and was in an entirely different procedural posture, namely discovery was completed and also it was not opposed by the plaintiff. Due to these key distinctions, Al-Salihi is distinguishable and thus does not compel a dismissal.

. Plaintiffs also allege violations of state laws, but without citation, a situation condoned by the Fourth Department. (See Williams I, 100 AD3d at 149.) Plaintiffs may rely upon a verified bill of particulars to further articulate the state law basis of their claims. (See CPLR 3041; Williams I, 100 AD3d at 149.)

. These direct contacts with Spengler also make Gander’s case of People v Sturm, Ruger & Co. (309 AD2d 91 [1st Dept 2003]) distinguishable.

. Gander assails the information that Spengler left the store with the guns, not Nguyen, to discount that it had special knowledge of Spengler’s status. As stated before, Gander originally provided this information in conjunction with its request that this court consider extrinsic proof; therefore, it cannot now ask the court to ignore the exact same information when it hurts it (Paulino attorney affirmation, exhibit E at 18).

. Gander also cites Guiliana v Chiropractic Inst. of N.Y. (45 Misc 2d 429, 430 [Sup Ct, Kings County 1965]), in which the motion to strike was granted. However, and as plaintiffs point out, Guiliana has been criticized. (See Siegel, NY Prac § 230 [5th ed 2011] [not everything beyond the essential elements of a claim need to be stricken].) Also, the Bristol Harbour Assoc., *882 L.P. case, which refused to strike information, was decided after Guiliana and is binding precedent.

. In addition, Gander’s president and CEO, Mike Owens, is a member of NSSF, and the NSSF protocols were part of a press release issued by the Brady Center in regard to this case and thus are already part of the public knowledge (Gander’s mem of law at 30; see e.g. Gibson v Campbell, 16 Misc 3d 1123[A], 2007 NY Slip Op 51549[U] [Sup Ct, NY County 2007] [refusing to strike information reported widely in the media]). Further proof of the propriety of the protocols allegations remaining in the present complaint is that they were also included in the Williams’ first amended complaint (see Williams appellate record at 93).